[Cite as *State v. Thompkins*, 2017-Ohio-1061.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160384 |
| | | TRIAL NO. B-1503766 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| DEVONTE THOMPKINS, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 24, 2017


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1} Defendant-appellant Devonte Thompkins appeals from the judgment of the Hamilton County Common Pleas Court convicting him of two counts of aggravated robbery and a firearm specification. He was convicted after a bench trial. Finding no merit to his assignments of error, we affirm the trial court's judgment.

### *Background Facts*

{¶2} As she worked the night shift at the front desk of a hotel, Janet Lawson noticed two juveniles and a man sitting at a bus stop across the street. After a while, the juveniles came into the hotel to ask if their mother was there. Lawson noticed that they were looking around at the security cameras and she asked them to leave.

{¶3} A few hours later, Lawson heard the hotel's front door slam open and saw the two juveniles leap toward her over the front desk. One held a gun to her head as they demanded money. Lawson believed the gun was real because she heard the juvenile "rack" it. While that person followed her at gunpoint to the back room and stole her cell phone, the other person leaned over the front desk to look back toward the front door, where the third individual was standing. The juveniles grabbed the money from the hotel's cash register, leaped back over the desk, and ran out the front door.

{¶4} A police officer responding to the incident went directly to the Gateway Plaza, a two-building apartment complex located at the opposite end of a footbridge from the hotel. Security footage at Gateway Plaza showed three males, an adult and two juveniles, leave the property's garage and walk westbound toward the hotel. The three males matched the descriptions of the robbery suspects.

{¶5}   The officer then reviewed the hotel's security footage and recognized the robbers as the juveniles he had seen with the adult on the Gateway Plaza security footage.   Shortly thereafter, a Gateway Plaza security guard called to inform the officer that one of the juveniles had just entered an apartment at the complex.

{¶6}   When police officers went to that apartment, Thompkins answered the door and acknowledged that it was his apartment.   Thompkins denied that anyone else was in the apartment, other than his sleeping baby girl.   However, at an officer's request for individuals inside the apartment to identify themselves, the juveniles who had robbed the hotel came out of the apartment.   The juveniles were 16-year-old I.G. and 14-year-old T.M.

{¶7}   A search warrant for Thompkins's apartment was obtained and executed.   Police found the hotel clerk's cell phone in Thompkins's bedroom, lodged between his mattress and box spring.   They found the hotel's cash stuffed under some clothing inside a bag in his bedroom closet.   They found a gun holster and a box of ammunition in the living room.

{¶8}   Thompkins was indicted for two counts of aggravated robbery with firearm specifications and two counts of robbery, related to thefts of property from the hotel and from the hotel clerk.

{¶9}   At trial, I.G. testified that he and T.M. met Thompkins at Gateway Plaza, where they decided that Thompkins would act as a lookout while I.G. and T.M. ran in to rob the hotel.   According to I.G., he and T.M. ran to Thompkins's apartment after the robbery.   When Thompkins got back to the apartment, the three of them counted the money from the robbery before the police arrived.

{¶10} Thompkins testified that he, T.M., and I.G. walked to the gas station across the street from the hotel. He said that T.M. told him that he was going to the hotel to see his mother. According to Thompkins, he stood outside the hotel while T.M. and I.G. went inside, because he was smoking a cigar, "and you can't smoke in the building at all." He said that the juveniles came running out of the hotel and ran back towards the Gateway Plaza.

{¶11} Thompkins testified that when he saw them running away, "I was thinking why they running? Like I was thinking, well, they young, so they probably running. I don't know. But I started to head home * * *. That's the same way they ran, so I just walked away."

{¶12} Thompkins said that T.M. and I.G. were at his apartment when he returned. He said that they showed him cash and told him that they had just robbed the hotel. According to Thompkins, he told them to leave and began to argue with them just as the police arrived. He claimed that he had immediately told police that four or five people were in the apartment. Thompkins acknowledged that he did not tell the police that T.M. and I.G. had just robbed the hotel, but Thompkins asserted, he did not "have a chance to. * * * It all happened so fast."

{¶13} At the conclusion of the trial, the court found Thompkins guilty as charged. The court merged the robbery counts with the respective aggravated-robbery counts and merged all the firearm specifications into one specification. The court imposed concurrent six-year prison sentences for the two aggravated-robbery convictions, and a consecutive three-year prison term for the firearm specification. Thompkins now appeals.

### The Prosecutor's Use of Impeachment Evidence

{¶14}  In his first assignment of error, Thompkins argues that the trial court erred by permitting the state to impeach its own witness with a prior inconsistent statement.  He concedes that he failed to object to the impeachment, so he has forfeited all but plain error.  *See State v. Neal*, 1st Dist. Hamilton No. C-140667, 2015-Ohio-4705, ¶ 45.

{¶15} To demonstrate plain error, an appellant must show that an error occurred, that the error was an obvious defect in the trial proceedings, and that the error affected the outcome of the trial.  *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).  "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶16}  Under Evid.R. 607(A), a party may attack its own witness's credibility with a prior inconsistent statement only upon a showing of surprise and affirmative damage.  *State v. Hancock*, 1st Dist. Hamilton No. C-030459, 2004-Ohio-1492, ¶ 36. Surprise exists where a witness's testimony materially differs from a prior statement and counsel had no reason to believe that the witness would recant at trial.  *State v. Holmes*, 30 Ohio St.3d 20, 23, 506 N.E.2d 204 (1987).  The determination of surprise is left to the trial court's sound discretion.  *Hancock* at ¶ 37; *State v. Diehl*, 67 Ohio St.2d 389, 391, 423 N.E.2d 1112 (1981).  Affirmative damage occurs where a witness testifies to facts that contradict, deny, or harm the party's trial position. *State v. Seay*, 1st Dist. Hamilton No. C-040763, 2005-Ohio-5964, ¶ 43.

{¶17} As an initial matter, we note that there is some confusion in the record between references to Thompkins's apartment complex (Gateway Plaza) and his actual apartment within that complex. The prosecutor asked I.G., "This apartment, at the Gateway Plaza that you were arrested in, had you ever been there before?" I.G. responded, "No, sir." Believing that I.G. had given a contradictory statement to police, the prosecutor used his prior statement to impeach him. I.G. had told the officers that on that night prior to the robbery he had been at Devonte Thompkins's house. This constituted surprise, and had Thompkins objected, the court would not have abused its discretion in finding surprise and affirmative damage. *See Holmes* at 23.

{¶18} It appears from the way the testimony developed that I.G. was making a distinction between the apartment complex and the apartment, and that his trial testimony, when clarified, did not contradict his statement to the officers.

{¶19} Thompkins argues that the trial court's admission of the impeachment evidence was plain error because I.G.'s prior statement was more damaging to his defense than I.G.'s trial testimony. Upon further questioning, I.G. clarified that he had not been inside Thompkins's apartment before the robbery. Instead, I.G. recounted that Thompkins had joined him and T.M. in a hallway within Thompkins's apartment complex. The use of the prior seemingly inconsistent statement led to I.G.'s clarification that the three had not been inside Thompkins's apartment before the robbery. Thompkins has failed to demonstrate any error by the trial court in the admission of the impeachment evidence. We overrule the first assignment of error.

*Ineffective Assistance of Counsel*

{¶20} In his second assignment of error, Thompkins argues that he was denied the effective assistance of counsel. To prevail on an ineffective-assistance claim, an appellant must demonstrate that his counsel's performance was deficient, and that, in the absence of counsel's errors there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Our review of counsel's performance must be "highly deferential." *Strickland* at 689.

{¶21} *Failing to object to the prosecutor's use of impeachment evidence.* Thompkins asserts that counsel's performance was deficient because he failed to object to the prosecutor's impeachment of I.G. However, as we have discussed, the use of the statement for impeachment was not error. Moreover, as an experienced trial attorney, defense counsel certainly was aware of the presumption that, in a bench trial, the court considered only relevant, material, and competent evidence. *See State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987); *Neal*, 1st Dist. Hamilton No. C-140667, 2015-Ohio-4705, at ¶ 49.

{¶22} *Eliciting damaging testimony on cross-examination.* Thompkins contends that defense counsel's cross-examination of I.G. elicited testimony that Thompkins had been involved in planning the robbery. He claims that, upon direct examination, I.G. had not implicated Thompkins in the planning. However, the record does not support Thompkins's assertion. On direct examination, I.G. testified that he had met up with T.M. and Thompkins and that, on the evening of the robbery, the three of them planned on "[g]etting some money" by "[r]obbing

7

something." They decided that he and T.M. would go into the hotel "to get the money" and that Thompkins would act as "just a lookout." Thus, I.G. implicated Thompkins in the robbery before cross-examination.

{¶23} Thompkins also argues that defense counsel should not have asked I.G. if Thompkins had gotten anything from the robbery, because it allowed I.G. to respond that they were going to give him something:

> [Defense counsel]: Okay. Did [Thompkins] get any proceeds?
>
> [I.G.]: What's that mean?
>
> [Defense counsel]: Did he get any of the stuff that was taken?
>
> [I.G.]: Yeah, we was going to.
>
> [Defense counsel]: Did he know that?
>
> [I.G.]: Yeah.

{¶24} While this may have provided additional evidence of Thompkins's involvement, it was duplicative of I.G.'s testimony on direct examination (that the three of them planned on getting some money). Therefore, we cannot say that counsel's cross-examination fell below an objective standard of reasonable representation. *See Strickland* at 687-688; *Bradley* at 380. We overrule the second assignment of error.

### *Weight and Sufficiency of the Evidence*

{¶25} In his third assignment of error, Thompkins challenges the weight and sufficiency of the evidence upon which his convictions were based. He contends that the state failed to prove that he was complicit in the aggravated-robbery offenses. He does not dispute that the state otherwise proved the elements of the offenses.

{¶26} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When considering a challenge to the weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶27} The aggravated-robbery statute, R.C. 2911.01(A)(1), provides:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

{¶28} To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus; R.C. 2923.03(A)(2). Criminal intent " 'may be inferred from presence, companionship, and conduct before and after the

offense is committed.' " *Johnson*, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971).

{¶29} In this case, the trial court, as the trier of fact, was entitled to disbelieve Thompkins's version of the events and to believe I.G.'s testimony that Thompkins had acted as the lookout in the robbery. Therefore, the convictions were not against the manifest weight of the evidence and were supported by sufficient evidence. We overrule the third assignment of error.

### *Sentencing*

{¶30} In his fourth assignment of error, Thompkins argues that his sentences are contrary to law because the trial court failed to consider the purposes and principles of sentencing, and failed to merge his convictions for aggravated robbery. Under R.C. 2953.08(G)(2), this court may vacate or modify a sentence only if we clearly and convincingly find that the record does not support the mandatory sentencing findings or that the sentence is otherwise contrary to law. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231; *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶31} *Consideration of the relevant sentencing factors.* The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. R.C. 2929.11(A). In sentencing a felony offender, a court must consider these purposes, as well the seriousness and recidivism factors set forth in R.C. 2929.12. R.C. 2929.12(A).

{¶32}  In this case, the trial court explicitly considered the purposes of felony sentencing, as well as the seriousness of the offenses and the likelihood that Thompkins would reoffend.  The court noted that Thompkins was 21 years old, unemployed, and had a juvenile adjudication for breaking and entering.  Referring to the presentence-investigation report, the court indicated that Thompkins had a high risk to reoffend.

{¶33} The sentences for the aggravated-robbery offenses fell within the statutory range for first-degree felonies, as set forth in R.C. 2929.14(A)(1). Moreover, R.C. 2929.14(C)(1) required the mandatory three-year prison term for the firearm specification to be served consecutively to and prior to the terms on the underlying felonies.

{¶34}  *Merger of offenses.*  Thompkins also argues that the trial court erred by failing to merge his two aggravated-robbery convictions under R.C. 2941.25(A), because the offenses were allied offenses of similar import. The record reflects that he asserted in the trial court that the robbery offenses merged with the aggravated-robbery offenses, and that the four firearm specifications should merge.  However, he did not assert that the aggravated-robbery offenses should merge.

{¶35}  By failing to seek the merger of his aggravated-robbery convictions in the trial court, Thompkins forfeited his allied-offenses claim for appellate review. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21. Therefore, he must demonstrate plain error. *Id.* at ¶ 22.

{¶36}  Offenses involving separate victims are offenses of dissimilar import within the meaning of R.C. 2941.25(B).  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26; *Rogers* at ¶ 27.  In this case, the state proved that

Thompkins and his codefendants had robbed the hotel clerk of her personal phone and robbed the hotel of cash from its register. *See State v. Lytle*, 10th Dist. Franklin Nos. 15AP-748 and 15AP-754, 2016-Ohio-3532, ¶ 54. Thompkins's conduct constituted offenses involving separate victims. Therefore, we hold that the trial court did not commit plain error in imposing separate sentences for the two counts of aggravated robbery. *See Ruff* at ¶ 26; *Rogers* at ¶ 27.

{¶37} Thompkins's sentences are not contrary to law, and the trial court did not err by failing to merge the aggravated-robbery convictions. Therefore, we overrule the fourth assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.**, and **ZAYAS, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.