[Cite as *State v. Hamilton*, 2017-Ohio-8140.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-160247 |
| | | C-160248 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1304561 |
| | | B-1405373(A) |
| vs. | : | |
| | | *O P I N I O N.* |
| JAMAR HAMILTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in Part, Sentences Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 11, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**MOCK, Presiding Judge.**

{¶1} Defendant-appellant Jamar Hamilton was convicted of one count of possession of heroin, a felony of the fifth degree, one count of possession of heroin, a felony of the first degree, one count of trafficking in heroin, a felony of the first degree, and one count of tampering with evidence, a felony of the third degree. He was sentenced to 11 years in prison for each of the first-degree-felony heroin charges, to be served concurrently with each other, but consecutively to the three years in prison he received for tampering with evidence. He was sentenced to 12 months in prison for the fifth-degree-felony heroin charge, to be served concurrently with his other sentences. In seven assignments of error, Hamilton challenges his convictions and sentences.

### Phone Tip Leads to Stop and Arrest

{¶2} On September 21, 2014, Cincinnati Police Officers Dent and Cyranek received an anonymous report that the occupants of a silver sports utility vehicle ("SUV") were engaged in suspected drug activity in the 2400 block of Halstead Avenue. The officers responded to the area, and initially failed to see a vehicle matching the description. As they turned around to leave the area, they spotted a silver SUV turning down the street.

{¶3} Dent ran the license plate and learned that the vehicle was owned by a woman named Lynetta Pitts, and that Hamilton was also associated with the vehicle. As the SUV drove past, the officers were unable to see who was in the vehicle because the windows were heavily tinted. As they turned around to initiate a traffic stop of the vehicle, an individual approached and told them that the SUV was the one that had been engaged in drug activity.

{¶4} The SUV pulled over, and Hamilton immediately exited from the rear door on the driver's side and started walking away. As fellow Police Officer Martin

2

arrived, Dent ordered Hamilton to stop while Cyranek ordered Pitts to roll down the window. Through the open window, Cyranek were able to see loose marijuana inside the vehicle. Pitts was removed from the vehicle, and Dent began to search it while Cyranek collected the marijuana. Dent found two diaper bags on the front passenger seat. Inside one of the bags, he found a cereal box which contained a bag with 500 grams of heroin inside. Pitts and Hamilton were then arrested. During the arrest, officers discovered that Hamilton had $6,700 on his person.

{¶5} Pitts and Hamilton were transported to the police station, where they were separately interrogated. Officers testified that Hamilton offered to give a full confession and to provide the names of his suppliers in exchange for the officers releasing Pitts. When the officers refused, Hamilton admitted that the heroin was his. Hamilton contradicted this account, stating that he never admitted that the heroin was his. Officers testified that the interview was not recorded, though Hamilton said that they had a recording device in the room. Subsequent testing revealed that Hamilton's DNA was on both the cereal box and the plastic bag in which the heroin was found.

{¶6} During the course of their investigation, officers learned that Hamilton had been staying at an apartment on Colerain Avenue. Officer Brockman went to the address and was able to use a remote control recovered from Pitts to open the complex's front gate. After confirming that a key recovered from Hamilton fit the lock on the apartment in question, police obtained a warrant to search the premises. In the apartment, officers found a handgun, a magazine for the handgun, and numerous documents with Pitts's and Hamilton's names on them.

{¶7} During a call from the Hamilton County Justice Center, Hamilton could be heard instructing someone to retrieve money, saying "[g]o to my house. My bedroom, my baby - - the biggest thing in my room, man, flip that (inaudible) go

3

down and get that cheese." When officers searched, they found that a hole had been cut in the bottom of the box spring at the Colerain Avenue address, but that the cavity was empty.

## The Indictment and Trial

{¶8} The Hamilton County Grand Jury indicted Hamilton for one count of trafficking in heroin, a felony of the first degree, with a major drug offender specification, one count of possession of heroin, a felony of the first degree, with a major drug offender specification, two counts of having a weapon while under a disability and two counts of tampering with evidence, felonies of the third degree. Hamilton filed a motion to suppress arguing that the traffic stop was improper, and a motion to suppress/motion to dismiss arguing that some video evidence from the stop had not been preserved. Those motions were overruled and the matter proceeded to a jury trial. The trial court dismissed one count of having a weapon under disability and one count of tampering with evidence at the close of the state's case. The jury acquitted Hamilton on the remaining count of having a weapon while under a disability, but found him guilty on the remaining counts and specifications. The trial court sentenced him to a total of 14 years in prison.

## The Trial Court Properly Overruled the Motions to Suppress

{¶9} In his first assignment of error, Hamilton claims that the trial court erred when it overruled his motions to suppress. "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* We must accept the trial court's factual findings if they are supported by competent,

credible evidence, but we review the trial court's application of the law to those facts de novo. *Id.*

{¶10} Hamilton first argues that the trial court erred because the police lacked reasonable suspicion to detain him or search the vehicle. The Fourth Amendment permits brief investigative stops—such as the traffic stop in this case—when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, ____ U.S. ____, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The standard takes into account "the totality of the circumstances—the whole picture." *Navarette*, quoting *Cortez* at 417. The level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause. *Navarette* quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

{¶11} In this case, officers received a dispatch indicating that someone had called to report a silver SUV engaged in drug activity on a certain street. When the officers arrived at this location, they soon saw the silver SUV in which Hamilton was a passenger being operated by Pitts. The officers were then approached by an individual who said, "That's the vehicle right there. He's been selling drugs all day." Officers also observed that the vehicle's windows were tinted so darkly that they could not see the occupants inside, prompting them to stop the SUV for a suspected tinted-window violation.

{¶12} The officers were justified in detaining Hamilton for two, independent reasons. First, the officers could detain him as a result of the traffic stop for the suspected tinted-window violation. This court has previously held that when law enforcement executes a valid traffic stop, they have the authority to detain not only

the driver but any other occupant of the vehicle "for as long as it reasonably takes to achieve the legitimate aims of the investigation." *State v. Jackson*, 1st Dist. Hamilton No. C-990371, 2000 WL 376420 (Apr. 14, 2000), citing *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). The fact that Hamilton exited from the vehicle immediately after the stop rather than being removed from the vehicle by law enforcement is inconsequential to the analysis. Once the officers began the stop, they had the right to detain Hamilton while the investigation proceeded.

{¶13} But even if the stop for the suspected traffic violation did not justify Hamilton's detention, the officers had the authority to detain him while they investigated the reported drug activity. A police officer may rely on outside information provided directly to him, such as tips from informants, or on information relayed to him via a flyer or radio dispatch. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Where an informant's tip is relied upon, the informant's veracity and reliability and his basis for knowledge must be assessed under the totality of the circumstances to determine whether the tip establishes reasonable suspicion. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). When the tip is from an anonymous caller, the tip, standing alone, will rarely provide the reasonable suspicion necessary for an investigative stop. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). But where a tip is received from a known informant and the details of the tip are easily verifiable, that tip has greater indicia of reliability. *Adams*.

{¶14} In this case, the officers received a tip through dispatch that there was a silver SUV operating in a certain street engaged in drug activity. Standing alone, this might not have been sufficient to justify stopping the vehicle and detaining Hamilton. But, once on the scene, an individual presented himself to law

enforcement and provided the same information. In this context, the Ohio Supreme Court has said that "an identified citizen informant may be highly reliable," and therefore, "rigorous scrutiny of the basis of his knowledge [is] unnecessary." *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999), quoting *Gates* at 233-234. In this context, and under the totality of the circumstances, we conclude that the officers had enough information to justify detaining Hamilton while they conducted their investigation.

{¶15} Having determined that the officers were justified in detaining Hamilton, we must address the issue of whether his rights were violated by the search of the SUV. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Rakas* at 134, citing *Alderman*. In this case, the vehicle belonged to Pitts, Pitts was driving the vehicle, and Hamilton had voluntarily left the vehicle prior to the time the search commenced. Therefore, he lacked standing to object to the search of the SUV.

{¶16} But even if he had standing to challenge the search, once the officers had justification to stop the vehicle and detain Hamilton, they were further justified in searching the vehicle when they saw marijuana in the vehicle. When a law-enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement. *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000), citing *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct.

7

2013, 144 L.Ed.2d 442 (1999); *see State v. Lang*, 117 Ohio App.3d 29, 36, 689 N.E.2d 994 (1st Dist.1996) (holding that discovery of cocaine in a vehicle in plain view provided probable cause to search the remainder of the vehicle for contraband).

{¶17}     On this point, Hamilton argues simply that it was not credible that the officers actually saw marijuana in the vehicle.   Matters as to the credibility of evidence are for the trial court to decide.  *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116. This is particularly true regarding the evaluation of witness testimony.   *State v. Williams*, 1st Dist. Hamilton Nos. C-060631 and C-060668, 2007-Ohio-5577, ¶ 45, citing *Bryan*.  We will not reverse a decision because the trial court chose one credible version of events over another.   And while Hamilton claims that the officers' testimony was not credible because the marijuana would have been indistinguishable from other debris and because Hamilton repeatedly claimed in telephone calls made from the Justice Center that the marijuana was not his and that it had been planted, this argument does not make the officers' account so incredible that the trial court could not credit them in making its decision.

{¶18}     For the forgoing reasons, we conclude that the trial court properly determined that police properly stopped the vehicle in which Hamilton had been a passenger, that they properly detained him during the course of their investigation, and that they properly searched the vehicle once it had been stopped.

### The State Did Not Fail to Preserve Materially Exculpatory Evidence

{¶19}     Hamilton also argues that the trial court erred when it failed to grant his combined motion to suppress/motion to dismiss based on the fact that the state had failed to preserve some of the video recordings of the traffic stop.  He argues that the lost footage would have demonstrated key points of the stop, and would have

8

provided evidence that the officers had been the source of the marijuana found in the vehicle.

{¶20}   A defendant has a constitutional guarantee to access to evidence. *State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693, ¶ 10 (1st Dist.).   The state's failure to preserve materially exculpatory evidence or its destruction of potentially useful evidence violates a defendant's due-process rights under the Fourteenth Amendment to the United States Constitution.  *California v. Trombetta*, 467 U.S. 479, 488-489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).  Evidence is materially exculpatory where "(1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means."  *State v. Benton*, 136 Ohio App.3d 801, 805, 737 N.E.2d 1046 (6th Dist.2000).  Even if the evidence is not materially useful, the failure to preserve evidence that is potentially useful violates a defendant's due-process rights where the police or the prosecution acts in bad faith.

{¶21}   Typically, the defendant bears the burden to prove that the evidence was materially exculpatory.  *See State v. Jackson*, 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991). But where the defendant moves to have the evidence preserved and the state destroys the evidence, the burden shifts to the state to show the inculpatory value of the evidence.  *Benson* at ¶ 11, citing *Benton* at 805.

{¶22}   In this case, Hamilton had properly requested that the video evidence be preserved.  But the trial court heard testimony that some of the video files could not be recovered because of equipment error.  Hamilton argues that this assertion was not credible, because officers had earlier claimed that the videos existed and the state had made representations that they had been preserved.   Hamilton's

9

underlying argument was that the police had destroyed any video evidence that would have shown them planting marijuana in the SUV. He concludes by asserting that "the state acted in bad faith because it represented that the videos existed and it had preserved them, yet they were not produced." But the trial court chose to believe the testimony of the officers that the videos could not be recovered because of equipment issues, and we will not disturb that determination on appeal.

{¶23} For the foregoing reasons, we conclude that the trial court properly overruled Hamilton's motion to suppress and combined motion to suppress and motion to dismiss. We overrule his first assignment or error.

### Failure to Grant Continuances Was Not an Abuse of Discretion

{¶24} In his second assignment of error, Hamilton argues that the trial court abused its discretion when it denied three separate motions for a continuance that he had made at different points during the proceedings below. "The decision whether to grant a motion for a continuance is committed to the sound discretion of the trial court." *State v. Hundley*, 1st Dist. Hamilton Nos. C-090760 and C-090761, 2010-Ohio-4640, ¶ 8, citing *State v. Bayless*, 48 Ohio St.2d 73, 102, 357 N.E.2d 1035 (1976).

{¶25} In the first instance in which Hamilton requested a continuance, he asked for more time at the conclusion of the first motion-to-suppress hearing so that he could subpoena someone to testify about whether the officers had actually been told that the vehicle they were looking for was a silver SUV. The trial court determined that the information was not relevant, because it had determined that the tinted-window violation had provided an independent basis upon which to overrule the motion to suppress. Furthermore, Hamilton had been able to argue during the hearing that the officers' testimony was not credible because it was not

10

supported by the documents generated by the dispatch. We conclude that it was not an abuse of discretion to deny this request.

{¶26} The second instance in which Hamilton requested a continuance occurred during the second hearing on his combined motion to suppress and motion to dismiss. Hamilton had requested a continuance to subpoena a police sergeant, who was a supervisor in charge of obtaining cruiser video footage. Hamilton's original request was granted, and he was given two days to obtain the presence of the sergeant. On the second day, the sergeant failed to appear, and the trial court continued the matter an additional month for other reasons as well as to allow for the appearance of the sergeant. At the third date, the sergeant again failed to appear. At that hearing, the trial court asked if the sergeant would be providing testimony that would be different from other officers who had already testified. The state remarked that "up to this point, at least, there have been a multitude [sic], many of which are defense witnesses, that have set forth why that video simply does not exist." The trial court responded, "Whether we need another witness to state that, I don't know." Counsel for Hamilton conceded that, "I don't know if he would say something different * * *." The trial court did not abuse its discretion when it denied Hamilton's motion to continue in this instance.

{¶27} Finally, Hamilton claimed that the trial court erred when it denied his request for a continuance during the trial when one of the officers had called in sick. Like the testimony of the sergeant, Hamilton had no information that the officer who was unable to testify would have provided testimony different from the other officers who had been at the scene. Continuances granted after a trial has commenced can be particularly difficult on the parties involved. *See State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 19. Additionally, at the time of trial, the case had

been continued 14 times for different reasons. We therefore conclude that the trial court did not abuse its discretion in this instance.

{¶28} We conclude that the trial court did not abuse its discretion when it refused to grant the three continuances cited by Hamilton in this case. We overrule his second assignment of error.

**Defendant's Absence During Voir Dire of Juror was not Improper**

{¶29} In his third assignment of error, Hamilton argues that his right to be present during all critical stages of his trial was violated when he was not permitted to be present during the voir dire of a juror after the trial had commenced. During the course of the trial, it came to the attention of the trial court that the spouse of one of the jurors had been contacted by a third party in an attempt to influence the juror's decision in the case. The trial court conducted a voir dire of the juror without Hamilton present and dismissed the juror.

{¶30} An accused has a fundamental right to be present at all stages of his criminal trial. Ohio Constitution, Article I, Section 10; Crim.R. 43(A). An accused's absence, however, does not necessarily result in prejudicial or constitutional error. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder v. Massachusetts*, 291 U.S. 97, 107-108, 54 S.Ct. 330, 78 L.Ed. 674 (1937), *overruled on other grounds*, *Duncan v. Louisiana*, 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and *Malloy v. Hogan*, 378 U.S. 1, 2, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), fn. 1.

{¶31} In a similar situation, the Ohio Supreme Court found no error in the exclusion of a defendant from a juror voir dire. *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983). In that case, a witness had contact with several jurors during a jury view of a crime scene. The court concluded that the failure to have the

defendant present for the voir dire was error, calling it a "transparent violation of both his constitutional and statutory rights." *Id.* at 286. But the court went on to note that the defendant had failed to show prejudice. *Id.* The court reasoned that the fact that counsel was present to protect his rights, and that the defendant had no knowledge of the contacts that would have allowed his input to be of assistance precluded a finding of prejudice. *Id.* at 286-287.

{¶32}  In this case, counsel was present during the voir dire of the witness, who did not object to the juror being removed for cause at the conclusion of the hearing. Hamilton argues that his absence denied him the "opportunity to refute any of the assertions or disavow any connection with the person who allegedly engaged in the tampering." But, by his own admission, his claimed lack of involvement or knowledge of the incident demonstrates that his input would not have been helpful in determining whether contact with an outside party rose to the level of requiring that the juror be removed for cause—a decision to which his counsel did not object. We overrule Hamilton's third assignment of error.

### Hamilton's Temporary Restraint Did Not Deprive Him of a Fair Trial

{¶33}  In his fourth assignment error, Hamilton claims that the trial court erred when it denied his motion for a mistrial after "the trial court's decision to have him shackled in front of the jury" and to comment that deputies should "[g]ag him if you have to." We disagree.

{¶34}  A mistrial must be declared only when the ends of justice so require and when a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). A trial court's decision to grant or deny a mistrial lies within its sound discretion and will not be disturbed on appeal absent an abuse of discretion. *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 42.

13

{¶35}  A review of the transcript reveals several instances of Hamilton actively disrupting the trial proceedings prior to the incident complained of.  The instance in question began after a sidebar discussion while he was on the witness stand.  He said "[e]xcuse me, attorneys. I ain't hear nothing going on when you speak at sidebar or nothing.  You all been having a lot of sidebars that a lot of people don't get to hear."  After being instructed by the trial court not to speak, he continued by saying "[y]ou told me before they walked in here that I was going to jail. * * * You ain't gonna act like you act in front of them in front of me, but you act like that when they not around."  The trial court then instructed deputies to remove him from the courtroom.  Deputies handcuffed Hamilton and began to remove him from the courtroom, while Hamilton continued to address the jury saying "[t]hey not showing their true colors."  This promoted the trial court to say "[g]ag him if you have to."

{¶36}  Rather than having Hamilton removed from the courtroom, the trial court relented and instead asked the bailiff to remove the jury.  The trial court then warned Hamilton not to continue to disrupt the proceedings.  Counsel for Hamilton moved for a mistrial, which the trial court denied. The handcuffs were removed from Hamilton, and the jury was returned to the courtroom.  At that point, the trial court told the jury, "I want to instruct the jury that anything that was observed prior to you being removed from the room is not to be considered with regard to guilt or innocence.  It's - - emotions run high at times like this.  We all have them. And it's important for you to know that."

{¶37}  At that point, the state continued with its cross-examination of Hamilton.  When the state indicated that it was an appropriate time to stop for the day, Hamilton had another outburst, saying "I want to [stop for the day] too so I can go sit in a jail cell now. * * * You want me to go sit in a jail cell now? * * * I walked into this place, and I don't get to walk back out."  The trial court admonished

14

Hamilton to be quiet, and the jury was led from the courtroom for the day. The next morning, the trial court and counsel met with the jury. The trial court discussed Hamilton's outbursts, the court's responses to them, and the fact that Hamilton had been temporarily placed in handcuffs by deputies. Counsel were given a chance to question the jurors. The jury members indicated that they each understood that nothing about what had happened had any bearing on whether or not Hamilton was guilty of the crimes for which he had been indicted. Counsel for Hamilton renewed his motion for a mistrial, which the trial court again denied.

{¶38} As a general rule, "no person should be tried while shackled * * * except as a last resort." *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). The presence of restraints tends to erode the presumption of innocence that our system attaches to every defendant. *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 79; *State v. Morgan*, 84 Ohio App.3d 229, 231-232, 616 N.E.2d 941 (5th Dist.1992). Nonetheless, in some circumstances it may be necessary for the safe, reasonable, and orderly progress of the trial. *State v. Frazier*, 1st Dist. Hamilton Nos. C-030571 and C-030572, 2004-Ohio-4108, ¶ 4. The decision whether to impose restraints lies within the trial court's discretion. *Franklin* at ¶ 79-80; *Morgan* at 231-232.

{¶39} In this case, the trial court did not abuse its discretion. While normally the preferred practice would be to conduct a hearing on the use of restraints, such a hearing is not required. *Frazier* at ¶ 4. That is particularly true where, as here, the need arose abruptly and the use of restraints lasted only a short time. Hamilton was on the witness stand when his outburst began, within close proximity to the judge and jurors. He was only restrained long enough to allow the situation to deescalate. This fact, coupled with the trial court's instructions to the jurors, and their assurance that they would not consider what happened in their

15

deliberations, was sufficient. *See State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995) (jurors are presumed to follow the curative instructions given by a trial judge).

{¶40} We do note that the trial court's remark that deputies should "[g]ag him if you have to" was inappropriate. But the isolated character of the remark, coupled with the trial court's instructions to the jury, satisfies us that the comment was not prejudicial to Hamilton to the degree that it draws the fairness of the trial into question. We overrule Hamilton's fourth assignment of error.

### Evidentiary Rulings Were Not Abuses of Discretion

{¶41} In his fifth assignment of error, Hamilton argues that the trial court abused its discretion in making different evidentiary rulings. He first argues that the trial court erred when it allowed Officer Brockman to testify to conversations that he had with a resident and the building manager at the Colerain Avenue address who told him that Hamilton lived in apartment number 415 in the complex—the apartment that was subsequently searched.

{¶42} The state argues that the statements were admissible because they explained how Officer Brockman was able to isolate the particular apartment as the target for further investigation. In *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, the Ohio Supreme Court outlined the test for when a witness can testify to statements made by another, admitted for the purpose of explaining the witness's subsequent conduct. The court said that "the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements"; the testimony must survive a balancing test under Evid.R. 403; and "the statements cannot connect the accused with the crime charged." *Id.* at ¶ 27.

{¶43} In this case, the conduct to be explained was relevant, equivocal, and contemporaneous with the statements. Brockman testified that he showed

16

Hamilton's picture to a resident of the apartment complex, and the resident told Brockman in which apartment Hamilton lived. The information was confirmed by the building manager. This conduct was clearly relevant. The conduct was also equivocal—there was no other way to explain how Brockman determined which apartment was connected to the key recovered from Hamilton without telling the jury what the resident told him. Finally, the search for the apartment tied to the key was contemporaneous with the statement made by the resident.

{¶44} We also conclude that the probative value of the statement was not outweighed by unfair prejudice. Brockman was simply told which apartment Hamilton lived in. Upon trying the key in the door of that apartment, Brockman discovered that the key fit the lock. This is distinguishable from cases like *Ricks*, where the statement came from another suspect, who had significant evidentiary ties to the crimes being investigated, and was attempting to foist blame on someone else. *Ricks* at ¶ 34.

{¶45} Finally, contrary to Hamilton's argument, the statement did not "connect" him to the crime charged. Hamilton argues that the

> testimony was extremely significant in connecting Mr. Hamilton to the apartment. There is reasonable probability that without that testimony, Mr. Hamilton would not have been convicted, particularly on the tampering with evidence charge as that was based on him allegedly asking someone to take money from a large object in a bedroom.

This situation is different from the one this court addressed in *State v. Jones*, 1st Dist. Hamilton No. C-160359, 2014-Ohio-3110. In that case, an informant who had known the defendant because they had dealt "dope" together told an officer that the defendant would be meeting him at a particular location, would be driving a certain

vehicle, and would have "dope" either in his vehicle or on his person. *Id.* at ¶ 7. These statements directly tied the defendant to the crime charged. *Id.* at ¶ 21; *see State v. Hackney*, 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 23 (testimony connected the defendant to the sale of cocaine, the offense charged). The statement made by the resident in this case did not connect Hamilton to the crime charged, but rather merely to the location where the crime occurred.

{¶46} Because the testimony did not violate the rule announced in *Ricks*, the trial court properly allowed Brockman to testify as to what the resident had told him.

{¶47} Hamilton next argues that the trial court abused its discretion when it refused to allow him to replay video footage and audio recordings of his telephone calls from the Justice Center during his direct examination to allow him to explain his version of what had occurred. But the complete video and audio recordings were played during the presentation of the state's case, and counsel for Hamilton cross-examined those witnesses about those recordings. Additionally, Hamilton was able to testify and give his version of what the recordings demonstrated. We find no abuse of discretion. *See State v. Morgan*, 1st Dist. Hamilton No. C-160495, 2017-Ohio-7489, ¶ 28 (no abuse of discretion when defendant was able to convey the information that she had sought to introduce through a video via other channels).

{¶48} We overrule Hamilton's fifth assignment of error.

### Sufficiency and Weight of the Evidence

{¶49} In his sixth assignment of error, Hamilton claims that his conviction for tampering with evidence was based on insufficient evidence and was against the manifest weight of the evidence. He also claims that his convictions for possession of and trafficking in cocaine were contrary to the manifest weight of the evidence. We disagree.

{¶50}   When reviewing the sufficiency of the evidence, this court is not permitted to weigh the evidence.  Rather, we must view all evidence and reasonable inferences in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt.  *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).   In contrast, when reviewing the manifest weight of the evidence, we must review the entire record, weigh the evidence, and consider the credibility of the witnesses to determine whether the trier of fact lost its way and committed such a manifest miscarriage of justice that the conviction must be reversed.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶51}   Hamilton was convicted of tampering with evidence, in violation of R.C. 2921.12(A)(1).  This required the state to prove that Hamilton had concealed or removed something with the purpose to impair its value or availability as evidence in an official proceeding that was underway.  The state sought to show that Hamilton had asked a third party to remove a cache of money hidden in the Colerain Avenue apartment in a box spring.

{¶52}   Hamilton argues that he could not be convicted of the tampering offense because he lived at another address, there was no evidence that there had been money in the box spring, and there was no evidence that he had the money removed to impair the investigation, but rather to obtain funds for his bail.  But the fact that the record contained evidence that he lived at another address does not negate the evidence that he also spent time at the Colerain Avenue apartment, which contained several pieces of evidence tying him to that address as well.  And while police found no evidence that there had been money in the box spring, the calls that Hamilton made contained sufficient circumstantial evidence that Hamilton had hidden money there that had been removed prior to the arrival of law enforcement.

19

Finally, while he may have also intended to use the money to post his bail, this does not negate the conclusion that the jury could have reached that his speaking in code and sense of urgency were indications that he wanted the money removed before police had a chance to seize it. Hamilton's conviction for tampering with evidence was based upon sufficient evidence and was not contrary to the manifest weight of the evidence.

{¶53} Hamilton claims that his convictions for trafficking in and possession of heroin were against the manifest weight of the evidence because the heroin was found in a diaper bag in the front seat that also contained Pitt's WIC card. Since there was nothing tying him to the bag, and because Pitts was in the front seat, he claims that the evidence showed that the heroin belonged to Pitts. But Hamilton's DNA was found on both the cereal box and the plastic bag in which the heroin had been packaged. Additionally, officers testified that he admitted that the heroin was his. While he claims that he did not make that admission, the jury was free to believe the evidence tying the heroin to him. Hamilton's convictions for trafficking and possession of heroin were not against the manifest weight of the evidence.

{¶54} We overrule Hamilton's sixth assignment of error.

### Trial Court Improperly Convicted Hamilton
### of Allied Offenses of Similar Import

{¶55} In his final assignment of error, Hamilton claims that the trial court erred when it convicted him of both trafficking in and possession of heroin. Hamilton did not raise this issue below. An accused's failure to seek merger in the trial court of allied offenses of similar import forfeits on appeal all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.2d 860; *State v. Thompkins*, 1st Dist. Hamilton No. C-160384, 2017-Ohio-1061, ¶ 35. The state concedes, and this court has previously held, that sentencing a defendant to separate

prison terms for the possession of and trafficking in the same controlled substance, even when the trial court orders the terms to be served concurrently, is plain error. *State v. Murph*, 1st Dist. Hamilton No. C-150263, 2015-Ohio-5076, ¶ 5-8. We therefore sustain Hamilton's seventh assignment of error.

**B-1304561 Conviction Uncontested**

{¶56} Hamilton has also appealed his conviction in case numbered B-1304561 for one count of heroin possession, which was the result of a plea agreement he reached with the state for charges arising from a separate incident. But none of the assignments of error address that conviction. We therefore affirm the judgment of the trial court in that case.

**Conclusion**

{¶57} We affirm Hamilton's findings of guilt on all counts, and we affirm his sentence for tampering with evidence. We vacate his sentences for possession of and trafficking in heroin. We remand the matter to the trial court for the purpose of allowing the state to elect which allied offense to pursue for sentencing, and for the trial court to then hold a new sentencing hearing on the elected count. *See State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381.

Judgment affirmed in part, sentences vacated in part, and cause remanded.

**MILLER, J.**, concurs.
**MYERS, J.**, concurs separately.

**MYERS, J.**, concurring separately.

{¶58} I concur with the majority in all respects except one. I would find that the out-of-court statements of the witnesses that Hamilton lived in apartment 415, as testified to by Officer Brockman, were hearsay and that their admission was error.

However, this error was harmless in light of the overwhelming evidence of Hamilton's guilt and the overwhelming other evidence tying him to the apartment.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

