[Cite as *State v. Stafford*, 2019-Ohio-3628.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J<br>Plaintiff-Appellee       Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, Jr., J. |

STATE OF OHIO

    Plaintiff-Appellee

-vs-

RAYMOND STAFFORD

    Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J
Hon. Craig R. Baldwin, J.
Hon. Earle E. Wise, Jr., J.

Case No. 18-COA-036

O P I N IO N

CHARACTER OF PROCEEDINGS:     Appeal from the Ashland County Court of
Common Pleas, Case No. 17-CRI-178

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     September 5, 2019

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER TUNNELL
Ashland County Prosecutor

VICTOR R. PEREZ
COLE F. OBERLI
Assistant Prosecuting Attorney's
110 Cottage Street
Ashland, Ohio 44805

For Defendant-Appellant

MATTHEW J. MALONE
Law Offices of Mathew J. Malone, LLC
10 East Main Street
Ashland, Ohio 44805

*Hoffman, P.J.*

{¶1} Defendant-appellant Raymond Stafford appeals his conviction and sentence entered by the Ashland County Court of Common Pleas, on one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree, following a jury trial. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶2} On December 15, 2017, the Ashland County Grand Jury indicted Appellant on the aforementioned charge. The Indictment arose out of a fatal two car accident which resulted in the death of Ernie Whitesel. The November 28, 2016 accident occurred when Appellant, who was driving a Mini Cooper, tried to pass Whitesel's Dodge Avenger. Appellant appeared before the trial court for arraignment on December 21, 2017, and entered a plea of not guilty to the Indictment.

{¶3} On February 13, and April 11, 2018, respectively Appellant filed motions requesting expert funds for an accident reconstructionist and a pharmacologist. Via Judgment Entries filed February 15, and May 25, 2018, the trial court authorized funds for both experts. The state filed a motion in limine, requesting the trial court prohibit Appellant from introducing any testimony and/or evidence regarding the presence of methamphetamine in Whitesel's system at the time of his death. Appellant filed a timely response, arguing the presence of illegal drugs in Whitesel's system would support his theory Whitesel caused the accident. The trial court conducted a hearing on the State's motion on September 18, 2018.

{¶4} At the hearing, Trooper Ryan Thomas with the Ohio State Highway Patrol's Crash Reconstruction Unit testified he was called to investigate a possibly fatal accident near the intersection of Route 58 and Township Road 350 in Ashland County. Trooper

Thomas arrived at the scene and learned the accident resulted in a fatality. Based upon his investigation and reconstruction work, Trooper Thomas concluded there was no evidence Whitesel's Avenger crossed into the southbound lane prior to or at the time of the crash. Trooper Thomas also found no evidence to establish Whitesel's use of methamphetamines was the sole cause of the crash.

{¶5} The trial court granted the state's motion in limine, prohibiting the presentation of any evidence Whitesel had methamphetamines in his system. The trial court found, "Whether the methamphetamine caused the vehicle to move in that manner is irrelevant." Tr. Sept. 18, 2018 Hearing at 52. The trial court further found the evidence of methamphetamine was not needed to assert the defense theory of the accident or to refute the state's theory. *Id.* The trial court added the evidence was "very prejudicial" and had "no probative value about this accident." *Id.* The trial court determined no one could "say with any degree of certainty, other than to speculate or opine, that [Whitesel] having methamphetamine in his system caused him to operate the vehicle in that manner." *Id.* The trial court advised Appellant he could proffer the testimony of his two expert witnesses regarding Whitesel's methamphetamine use at trial, but outside the presence of the jury.

{¶6} The matter proceeded to trial on September 25, 2018. The state called eight witnesses, including the first responders, the medical examiner who conducted the autopsy of Whitesel, and three accident reconstructionists, who were recognized as experts by the court.

{¶7} Lesley Handley, the assistant chief of the Sullivan Volunteer Fire Department, testified he was eating breakfast early in the morning of November 28, 2016,

when he heard a rumbling sound. Handley and his wife looked out their front door and observed a car in a ditch off the west side of State Route 58. Handley immediately entered his car and drove to the intersection. When he arrived, he noticed a second vehicle on the south side of Township Road 350. The driver of the first vehicle, who was subsequently identified as Appellant, was outside his vehicle on his cell phone. Handley walked to the second vehicle, which was upside down in a field, and found no one inside. A passerby and Hadley began to search for the driver. The passerby found the driver, who was later identified as Whitesel, across Township Road 350. Handley commenced CPR, but did not detect a pulse and Whitesel was not breathing. When EMT arrived, they started CPR with a LUCAS device. Prior to leaving the scene, Handley spoke with Appellant who explained Whitesel "came up behind him really close and passed him and slowed down * * *aggravating him, kind of antagonizing." Trial Transcript at 32.

{¶8} When Deputy Curtis Hall of the Ashland County Sheriff's Department arrived at the scene, he observed the skid marks and immediately recognized the gravity of the situation. He turned his cruiser to block the roadway. The deputy approached the emergency area of the scene and immediately recognized Whitesel as he knew the victim's family. Deputy Hall recalled Whitesel was unresponsive to attempts to resuscitate him. The deputy described Whitesel as lifeless.

{¶9} EMS Chief Keith Rowe with Sullivan Fire and Rescue arrived at the accident scene at approximately 5:30 a.m. He observed Whitesel on the north side of Township Road 350. CPR was in progress. Rowe stated he confirmed the Life Flight helicopter was 12-15 minutes away and determined he needed to get Whitesel to the closest definitive care, Lodi Hospital. Rowe noted Whitesel did not respond to any of the

treatment provided by emergency personnel.  Whitesel was pronounced dead at the hospital.

{¶10}  Trooper Paul Green of the Ohio State Highway Patrol took a statement from Appellant at the scene.  Appellant advised Trooper Green he was driving north on State Route 58 in Sullivan, Ohio, when the driver behind him approached with bright lights on. Appellant let the driver go around him, but once the driver passed, he slowed down. Appellant attempted to pass the vehicle, however, the driver sped up and clipped Appellant's vehicle on the right side when the back side of the driver's vehicle swung. Trooper Green did not observe any indication Appellant was impaired.  Trooper Green testified about the damage to each of the vehicles and concluded the evidence did not corroborate Appellant's statement Whitesel's Avenger back swung and struck Appellant's Mini Cooper.

{¶11}  Trooper Ryan Thomas, who testified at the hearing on the state's motion in limine, also testified at trial.  Trooper Thomas used data gathered at the scene, including gashes, yaw marks, skid marks, damage to both vehicles, and electronic measurements as well as the information collected from the event data recorder of Whitesel's Avenger to determine the cause of the crash. Trooper Thomas concluded Appellant's vehicle struck the Avenger on the left side and caused the Avenger to travel off the roadway.  The trooper noted Appellant's vehicle was traveling between 72 and 77 mph following the impact.  Whitesel's vehicle was traveling 76 mph, post impact.  Trooper Thomas stated the physical evidence did not corroborate Appellant's explanation of how the accident occurred.  He added the Avenger has front wheel drive and it is not possible for the back end of the vehicle to break lose when it is accelerating.  Trooper Thomas stated the

accident occurred in the northbound lane. He concluded Appellant's Mini Cooper veered to the right, traveling from the southbound lane to the northbound lane, striking the Avenger as he attempted to pass. As a result, the Avenger traveled off the right side of the roadway.

{¶12} Lieutenant Christopher Kinn of the Ohio State Highway Patrol analyzed the data downloaded from the event data recorder retrieved from Whitesel's Avenger. Lt. Kinn explained how the data is analyzed and the information acquired therefrom. Based upon his analysis of the data, Lt. Kinn concluded the Avenger which was traveling at a peak speed of 100 mph moments before the accident, lost lateral stability after being struck by Appellant's vehicle, then traveled off the road and bolted.

{¶13} Lt. Kinn reviewed the statement Appellant gave to Trooper Green and found the statement was not consistent with his findings or with his knowledge, training, and experience. The lieutenant found no evidence the Avenger traveled into the southbound lane. He added a Dodge Avenger is front wheel drive and cannot "fishtail" as Appellant indicated in his statement. The data also did not support Appellant's claim he was driving 60 mph as he was attempting to pass the Avenger. According to Lt. Kinn, if Appellant was traveling at 60 mph, he would be behind the Avenger, which was traveling at 100 mph, not next to it.

{¶14} James Crawford, a crash reconstructionist with Intertech Crash Reconstruction Services, Grafton, Ohio, stated, on October 5, 2017, he was asked to review Trooper Thomas' crash reconstruction, and validate and verify the trooper's findings. Crawford testified 4.3 seconds prior to the Avenger ending up off the road and in the ditch, the vehicle was traveling 99 mph. Crawford noted the Mini Cooper would

have to be traveling at least that speed, if not more, in order to pass the Avenger. When the vehicles made contact, the Avenger was traveling at 83 mph and the Mini Cooper was traveling at least at a commensurate speed. Crawford added there was no physical evidence the Avenger crossed into the southbound lane. The impact between the vehicles occurred in the northbound lane. Based upon the yaw marks, Crawford determined the Mini Cooper bounced off the Avenger.

{¶15} Crawford reviewed the statement Appellant gave at the scene and found it to be self-serving. Crawford noted Appellant claimed he was traveling at a much slower speed, but the physical evidence contradicted the claim. Appellant stated the back end of the Avenger swung out, which Crawford explained was not possible as an Avenger is a front wheel drive vehicle. Further, the damage on the vehicles did not support Appellant's statement the Avenger fishtailed. Appellant also indicated the Avenger was accelerating prior to the collision. However, the data from the event data recorder revealed the Avenger was decelerating just before impact and Whitesel had been braking at the time.

{¶16} Crawford concluded the crash was caused by Appellant's attempting to pass the Avenger at a high rate of speed on a two lane road, making a sharp turn of the steering wheel, and colliding with the Avenger. Crawford opined one vehicle passing another on a two lane road in the middle of Amish country during the early morning hours in late November, when it is still dark, was not a safe thing to do.

{¶17} Dr. Dan Galita with the Cuyahoga Medical Examiner's Office performed the autopsy on Whitesel. Dr. Galita testified Whitesel sustained various abrasions as well as a large laceration of the scalp with avulsion, meaning the scalp was completely detached

from the skull. The medical examiner explained the laceration with avulsion was caused by "a very powerful blunt force to the area which split the skin and removed completely the scalp." Tr. At 125. Whitesel also sustained substantial internal injuries including a cerebral intra-ventricular hemorrhage, a fractured sternum, broken ribs, punctured lungs, laceration of the interatrial septum of the heart, a ruptured diaphragm, and lacerations of the liver and spleen. Dr. Galita concluded all of Whitesel's injuries were caused by severe blunt force trauma, and a number of the injuries alone were fatal.

{¶18} Appellant testified he left for work at approximately 4:50 a.m. on November 28, 2016. Appellant was stopped on Route 58 North when he observed a vehicle with its high beams illuminated approaching at a high rate of speed. The driver of the vehicle, who was subsequently identified as Whitesel, passed Appellant, moved back into the northbound lane, and slowed his vehicle. Initially, Appellant believed Whitesel was slowing down to turn into a driveway, but when Whitesel did not turn, Appellant moved into the southbound lane to pass Whitesel, who then started to accelerate. Appellant increased his speed to make the pass, but Whitesel continued to increase his speed. Appellant saw the back end of Whitesel's vehicle "drop", which caused it to travel into the southbound lane and strike the front end of Appellant's Mini Cooper. Appellant testified he informed Trooper Green he was traveling 60 mph as he initiated the pass, but increased his speed as Whitesel accelerated. Appellant maintained he could not have been traveling 90 mph, as the experts testified, because his Mini Cooper was in 4th gear which is between 70-75 mph, and he did not change gears.

{¶19} In order to preserve the record for appeal relative to its grant of the state's motion in limine, the trial court permitted Appellant to proffer the testimony of two experts,

Szabolcs Sofalvi, a forensic scientist with the Cuyahoga County Medical Examiner's Office, and of Dr. Jon Sprague, Director of the Ohio Attorney General Center of Forensic Science and BCI, who was recognized as an expert in pharmacology.

{¶20} Sofalvi testified he performed toxicology testing on Whitesel and prepared a report based upon the results thereof. The testing revealed Whitesel had methamphetamine and amphetamine in his system at the time of the crash. Sofalvi noted Whitesel's methamphetamine level was 154 nanograms per milliliter of whole blood, which was above the legal limit for operating a motor vehicle of 100 nanograms per milliliter. Sofalvi explained methamphetamine is a stimulant and can cause aggressive or erratic driving. On cross-examination, Sofalvi acknowledged a toxicology report could not establish how an individual was driving or what caused an accident.

{¶21} Dr. Sprague testified he reviewed Sofalvi's toxicology report on Whitesel as well as published works on the subject of the effects of methamphetamine on driving. He noted studies report drivers under the influence of methamphetamine behave aggressively or in a paranoid manner. Dr. Sprague concluded, because the level of methamphetamine found in Whitesel's system was over the legal limit, the methamphetamine contributed to the accident. On cross-examination, Dr. Sprague acknowledged he did not review the accident report or the reconstructionists' report. Dr. Sprague further conceded he did not know if Whitesel was driving erratically on the day of the accident.

{¶22} Charles Veppert, an accident reconstructionist for Valley Technical Services, testified on Appellant's behalf. Veppert reviewed all of the information complied by the police and the state's experts, including the crash reports, the reconstruction

reports, the information from the event data recorder of Whitesel's Avenger, photographs of the vehicles and the accident scene, and the scale diagram and mapping of the scene. Although Veppert took issue with the reconstruction reports as said reports failed to show the entirety of the travel of the vehicles prior to the onset of the yaw marks and failed to provide an explanation of Appellant's statement of the events, Veppert was in agreement with the determinations made by Trooper Thomas and Crawford relative to the period between the onset of the yaw marks caused by Appellant's vehicle to the final rest of both vehicles. Veppert concluded the yaw marks caused by Appellant's vehicle were not steer-induced, but rather caused by an outside force impacting the vehicle. Veppert noted Appellant's claim Whitesel made the first contact was just as likely as Crawford's determination Appellant swerved to the right, initiating the first contact.

{¶23} After hearing all the evidence and deliberating, the jury found Appellant guilty as charged. The trial court scheduled a sentencing hearing for October 29, 2018, and ordered a pre-sentence investigation. The trial court sentenced Appellant to a period of incarceration of 18 months with credit for time served; suspended Appellant's license for a period of five years; and ordered him to pay restitution to Whitesel's family in the amount of $13,300.25, as well as court costs. The trial court subsequently stayed Appellant's sentence pending this Appeal.

{¶24} It is from his conviction and sentence Appellant appeals, raising the following assignments of error:


I. APPELLANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN THE TRIAL COURT PROHIBITED

APPELLANT FROM INTRODUCING RELEVANT AND PROBATIVE EVIDENCE RELATED TO THE ILLEGAL LEVELS OF METHAMPHETAMINE AND AMPHETAMINE IN THE DECEDENT'S SYSTEM AT THE TIME OF THE ALLEGED OFFENSE.

II. APPELLANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN HIS TRIAL ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO TESTIMONY REGARDING THE ULTIMATE ISSUE OF RECKLESSNESS.

I.

**{¶25}** In his first assignment of error, Appellant contends the trial court violated his Sixth and Fourteenth Amendment Rights by prohibiting Appellant from introducing relevant and probative evidence related to the illegal levels of methamphetamine and amphetamine found in Whitesel's system at the time of the crash.

**{¶26}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). As a general rule, all relevant evidence is admissible. Evid. R. 402. However, even if relevant, evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid. R. 403(A).

**{¶27}** Appellant was convicted of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), which provides:

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:

* * *

(2) In one of the following ways:

(a) Recklessly.

{¶28} Appellant explains, because "[t]he primary dispute at trial was whether Whitesel came into [his] lane and caused the accident or if [he] came into Whitesel's lane and caused the accident", his "proffered experts would have provided relevant and probative testimony to support [his] position that it was Whitesel who came into [his] lane and made the contact which caused the accident." Brief of Appellant at 6. Appellant adds his experts indicated methamphetamine causes aggressive driving and erratic behavior and Whitesel's "road rage" was consistent with a driver under the influence of methamphetamine. Appellant submits the cause of the accident was also attributed to Whitesel's 'road rage'." *Id.* Appellant concludes evidence of Whitesel's methamphetamine use was relevant as "it tends to show that a fact of consequence – which vehicle caused the accident – more or less probable than it would be without the evidence." *Id.*

{¶29} The definition of "cause" in criminal cases is identical to the definition of "proximate cause" in civil cases. *State v. Chambers,* 53 Ohio App.2d 266, 373 N.E.2d 266(9th Dist. 1977); *State v. Bendycki,* 8th Dist. Cuyahoga No. 42813, 1981 WL 4957;

*State v. Cruse,* 1st Dist. Hamilton No. C–811031, 1982 WL 8765. "Where the defendant's conduct was only one of multiple causes that led to the legal injury, the test for causation is whether (1) the defendant's conduct was a "substantial factor" in bringing about the harm, and (2) there is no other rule of law that relieves the defendant of liability." *State v. Filchock*, 166 Ohio App.3d 611, 2006–Ohio–2242, ¶ 77 (11th Dist.).

**{¶30}** At trial, Appellant recalled the statement he gave Trooper Green immediately following the crash. Appellant told the trooper, as he attempted to pass the Avenger, Whitesel sped up and clipped his Mini Cooper on the right side when the back end of the Avenger swung out. Appellant proceeded to describe how he attempted to pass Whitesel's Avenger, but as he sped up to do so, Whitesel accelerated more which ultimately caused the back end of the Avenger to swing out and strike the front end of Appellant's Mini Cooper.

**{¶31}** The testimony of the accident reconstructionists contradicted Appellant's description of how the accident occurred and established Appellant's actions caused the accident. Trooper Thomas testified how he used the data gathered at the scene, including gashes, yaw marks, skid marks, the damage to both vehicles, and electronic measurements as well as the information collected from the event data recorder of the Avenger to determine how the accident occurred. Trooper Thomas explained to the jury how that evidence supported his conclusion. James Crawford reviewed Trooper Thomas' crash reconstruction, and validated and verified the trooper's findings. Crawford testified, when the vehicles made contact, the Avenger was traveling at 83 mph and the Mini Cooper was traveling at least at a commensurate speed. Crawford stated there was no physical evidence the Avenger crossed into the southbound lane and the impact occurred

in the northbound lane. Crawford noted, based upon the yaw marks, the Mini Cooper bounced off the Avenger. Further, the data from the event data recorder revealed the Avenger was decelerating just before impact and Whitesel had been braking at the time.

{¶32} A defendant cannot be relieved of criminal liability merely because factors other than his own actions contributed to the death, unless the other factors were the *sole* proximate cause of death. *Id.* at ¶ 78. More specifically, the alleged contributory negligence of the decedent cannot be used as a defense in an aggravated vehicular homicide prosecution unless it was the sole proximate cause of the accident. *Id.*; *State v. Vansickle,* 5th Dist. Licking No. CA–3682, 1992 WL 61579. As long as the state can prove the defendant's actions were *a* cause of the death, it is irrelevant whether there were any other contributory causes. *State v. Ward,* 2d Dist. Montgomery No. 18211, 2001 WL 220244. In other words, a defendant's criminal act does not have to be the sole cause of harm. *State v. Emerson*, 2d Dist. Darke, 2016-Ohio-8509, 78 N.E.3d 1199, ¶ 24.

{¶33} Although Whitesel's being under the influence of methamphetamine may have contributed to the fatal accident, such was not the sole proximate cause of the accident. Appellant's conduct was a "substantial factor" in bringing about the harm, and there is no other rule of law that relieves him of liability. The physical findings do not support Appellant's assertion Whitesel's vehicle initiated contact with Appellant's vehicle in the southbound lane; but rather supports the State's assertion Appellant initiated contact with Whitesel's vehicle in the northbound lane and caused the fatal accident. Accordingly, we find the trial court's decision to prohibit the testimony of Sofalvi and Dr. Sprague was not an abuse of discretion.

{¶34} Appellant's first assignment of error is overruled.

II.

**{¶35}** In his second assignment of error, Appellant asserts his trial counsel rendered ineffective assistance by failing to object to statements made by the state's witnesses going to an ultimate issue for the jury, to wit: whether Appellant acted recklessly.

**{¶36}** To prevail on a claim of ineffective assistance of counsel, a defendant "must satisfy a two-prong test." *State v. Kennard,* 10th Dist. No. 15AP-766, 2016-Ohio-2811, ¶ 14, citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first prong, a defendant must "demonstrate that his trial counsel's performance was deficient." *Id.* If a defendant "can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance." *Id.* A defendant's "failure to make either showing defeats a claim of ineffective assistance of counsel." *Id.,* citing *State v. Bradley,* 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), quoting *Strickland* at 697, 104 S.Ct. 2052.

**{¶37}** In order to demonstrate deficient performance by counsel, a defendant "must show that his counsel committed errors which were so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at ¶15 (Quotations omitted). Further, a defendant "must overcome the strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance." *Id.,* citing *Strickland* at 689. In order to show prejudice, a defendant "must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different." *Id.,* citing *Strickland* at 689.

**{¶38}** Appellant points to a number of times during trial when "witnesses were permitted to give testimony, without objection, on whether [Appellant] acted recklessly."

Brief of Appellant at 8. Those instances are as follows. Trooper Green testified Appellant committed an improper lane change. Trial Tr. at 115. Trooper Thomas stated traveling 70 mph in a 55 mph zone in order to pass another vehicle would be a driving infraction. *Id.* at 187. Lt. Kim testified passing another vehicle at Appellant's speed on a two lane road while dark was not safe. *Id.* at 217. Accident reconstructionist James Crawford described Appellant's actions as "[c]ertainly not a safe thing to do." *Id.* at 246. Appellant's accident reconstructionist, Charles Veppert, concluded, "if [Appellant] never tried to pass [Whitesel], the crash would not have happened. *Id.* at 373.

**{¶39}** The failure to object to error alone ordinarily is not enough to sustain a claim of ineffective assistance of counsel. *State v. Stanford*, 10th Dist. No. 16AP-873, 2018-Ohio-3961, ¶ 27, citing *State v. Holloway*, 38 Ohio St.3d 239 (1988). Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. A reviewing court must be "highly deferential to counsel's performance and will not second-guess trial strategy decisions." *State v. Tibbetts*, 92 Ohio St.3d 146, 166-67 (2001). In evaluating a claim of ineffective assistance of counsel based on counsel's failure to object, we consider whether such an objection would have been meritorious. *State v. Cashin*, 10th Dist. No. 09AP-367, 2009-Ohio-6419, ¶ 12.

**{¶40}** We find the statements about which Appellant complains do not speak to Appellant's mental state. The witnesses were merely commenting upon Appellant's actions and never opined Appellant acted "recklessly". Thus, we find any objection would not have been meritorious. Assuming, arguendo, trial counsel should have objected to

this testimony, we find Appellant is unable to establish there was a reasonable probability that, but for the failure to object, the outcome of the trial would have been different.

**{¶41}** Furthermore, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid. R. 704.

**{¶42}** Appellant's second assignment of error is overruled.

**{¶43}** The judgment of the Ashland County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Baldwin, J. and

Wise, Earle, J. concur