[Cite as *State v. Stafford*, 2020-Ohio-3993.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 18-COA-036 |
| RAYMOND STAFFORD | |
| Defendant-Appellant | O P I N IO N |


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Ashland County Court of Common Pleas, Case No. 17-CRI-178 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 5, 2020 |
| APPEARANCES: | |


| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| CHRISTOPHER TUNNELL<br>Ashland County Prosecutor | MATTHEW J. MALONE<br>Law Offices of Matthew J. Malone, LLC<br>10 East Main Street |
| VICTOR R. PEREZ<br>COLE F. OBERLI<br>Assistant Prosecuting Attorney's<br>110 Cottage Street<br>Ashland, Ohio  44805 | Ashland, Ohio  44805 |

*Hoffman, P.J.*

**{¶1}** Defendant-appellant Raymond Stafford appeals his conviction and sentence entered by the Ashland County Court of Common Pleas, upon this Court's granting of his App.R. 26(B) motion to reopen the appeal. Plaintiff-appellee is the state of Ohio.

### STATEMENT OF THE CASE[1]

**{¶2}** On December 15, 2017, the Ashland County Grand Jury indicted Appellant on one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree. The Indictment arose out of a fatal two car accident on November 28, 2016, which resulted in the death of Ernie Whitesel. The November 28, 2016 accident occurred when Appellant, who was driving a Mini Cooper, tried to pass Whitesel's Dodge Avenger. Appellant appeared before the trial court for arraignment on December 21, 2017, and entered a plea of not guilty to the Indictment.

**{¶3}** The state filed a motion in limine, requesting the trial court prohibit Appellant from introducing any testimony and/or evidence regarding the presence of methamphetamine in Whitesel's system at the time of his death. Appellant filed a timely response, arguing the presence of illegal drugs in Whitesel's system would support his theory Whitesel caused the accident. After conducting a hearing, the trial court granted the state's motion in limine, prohibiting the presentation of any evidence Whitesel had methamphetamines in his system.

---

[1] For a complete recitation of the underlying facts and prior procedural history of this matter, see this Court's opinion in Appellant's direct appeal, *State v. Stafford*, 5th Dist. Ashland App. No. 18-COA-036, 2019 -Ohio-3628.

**{¶4}** The matter proceeded to trial on September 25, 2018. The state called eight witnesses, including the first responders, the medical examiner who conducted the autopsy of Whitesel, and three accident reconstructionists, who were recognized as experts by the court. After hearing all the evidence and deliberating, the jury found Appellant guilty as charged. The trial court sentenced Appellant to a period of incarceration of 18 months with credit for time served; suspended Appellant's license for a period of five years; and ordered him to pay restitution to Whitesel's family in the amount of $13,300.25, as well as court costs.

**{¶5}** Appellant appealed his conviction and sentence to this Court, raising two assignments of error. Appellant's first assignment of error challenged the trial court's failure to allow him to introduce evidence of the illegal drug levels found in the victim's system at the time of the crash. In his second assignment of error, Appellant claimed trial counsel was ineffective for failing to object to testimony regarding the ultimate issue of recklessness. This Court affirmed Appellant's conviction and sentence. *State v. Stafford*, 5th Dist. Ashland App. No. 18-COA-036, 2019-Ohio-3628.

**{¶6}** On September 25, 2019, Appellant filed an Application for Reopening pursuant to App. R. 26(B). Therein, Appellant asserted appellate counsel was ineffective on direct appeal for failing to raise three proposed assignments of error: I. Trial counsel was ineffective in failing to object to erroneous, contradictory, and prejudicial jury instructions; II. Trial counsel was ineffective for failing to request appropriate lesser included offenses; and III. Jury selection irregularities.

**{¶7}** Relative to the third proposed assignment of error, Appellant filed a motion for partial transcript at the state's expense. Via Judgment Entry filed November 26, 2019,

this Court granted Appellant's motion and ordered the transcript of the voir dire only be prepared at the state's expense.  This Court also held in abeyance a ruling on Appellant's third proposed assignment of error.  Via Judgment Entry filed December 11, 2019, this Court granted Appellant's motion to reopen with respect to Proposed Assignment of Error 1, overruled the motion with respect to Proposed Assignment of Error 2, and reiterated our prior decision to hold in abeyance a ruling on Proposed Assignment of Error 3.  We ordered the Ashland County Clerk of Courts to transmit the record in this matter and briefing proceed in accordance with App. R. 18.

{¶8}   On December 18, 2019, the state filed a motion to correct the record in the trial court, arguing the court reporter misplaced a period as well as the word "recklessly" when she prepared the trial transcript for the direct appeal.  The state sought an order from the trial court to correct the alleged errors.  On December 20, 2019, the court reporter filed an Errata Sheet with the trial court, offering the following corrections after checking her steno notes:

Page No. 416 Line No. 20 & 21 Change to: . . . caused the death of Ernest R. Whitesel recklessly.

Operate means to cause or have caused movement.

Reason for change: Recklessly should have been attached to prior sentence as read to the Jury from the Jury Charge by the Judge.  December 20, 2019 Errata Sheet.

**{¶9}** Via Judgment Entry filed January 2, 2020, the trial court granted Appellant an extension of time in which to file a response to the state's motion to correct the record, but denied Appellant's request for a hearing. The trial court noted:

The jury was provided the written copy of the jury instructions from which the Court read the instructions of law at the time the jury was charged. The written copy of the jury instructions, preserved for the record with the exhibits, accurately reflects the instructions read and physically handed to the jury for the purpose of deliberating the case. The Court possesses a copy of those instructions, as printed for the jury and they are already a part of the record in this case. A hearing is not necessary. January 2, 2020 Judgment Entry.

**{¶10}** Subsequently, on January 21, 2020, the trial court issued a judgment entry, granting the state's motion to correct the record. The trial court stated:

At issue here is mis-placed punctuation in the transcript of the [c]ourt's jury charge. As the [c]ourt noted in a previous entry, the jury in this case was provided with the written text of the jury charged for use in the jury room. The jury did not receive the stenographer's interpretation of the [c]ourt's oral inflection used during the jury charge. Clearly, even with the record as presented prior to correction, the [c]ourt stated the word "recklessly" while charging the jury. It is not as if the [c]ourt failed to give a

portion of the charge.    In this case, it is merely the stenographer's interpretation of what was stated by the [c]ourt that is at issue, not the statement itself.  One cannot assume, even considering the stenographer's error, that the jurors heard the charge as reflected by the stenographer's keying.  January 21, 2020 Judgment Entry.

**{¶11}** The trial court continued:

The [c]ourt read the jury charge from the printed copy ultimately given to the jury, and which the jury possessed during deliberations for referral.  There is no dispute as to the content and punctuation of the text from which the [c]ourt read the instructions to the jury, and which the jury possessed for reference purposes while engaged in deliberations. *Id.*

**{¶12}** On December 20, 2019, the state filed a motion for reconsideration of this Court's decision to reopen Appellant's appeal.   This Court denied the motion for reconsideration on January 7, 2020.

**{¶13}** Upon completion of the transcript of the voir dire, Appellant filed a Supplemental Application to Reopen Pursuant to App. R. 26(B) on January 2, 2020.  This Court granted reopening of Appellant's third proposed assignment of error.

**{¶14}** Appellant presents the following assignments of error in this reopened appeal for our review:

I. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO ERRONEOUS, CONTRADICTORY, AND PREJUDICIAL JURY INSTRUCTIONS.

III. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO BE PRESENT WHEN VOIR DIRE OF AN IMPANNELED [SIC] JUROR, WHO HAD FAILED TO DISCLOSE A PERSONAL RELATIONSHIP WITH THE ALLEGED VICTIM, OCCURRED OUTSIDE OF APPELLANT'S PRESENCE AND WITHOUT APPELLANT'S WRITTEN WAIVER PURSUANT TO CRIM. R. 43.

I

**{¶15}** In his first assignment of error, Appellant raises a claim of ineffective assistance of counsel due to defense counsel's failure to object to jury instructions, which he contends were erroneous, contradictory, and prejudicial.

**{¶16}** Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability

of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

{¶17} Trial counsel is entitled to a strong presumption all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, *quoting Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶18} Appellant submits trial counsel was ineffective for failing to object to following portion of the jury instructions as set forth in the trial transcript:

> The Defendant, Raymond L. Stafford, is charged in Count 1 of the Indictment, Aggravated Vehicular Homicide. Before you find the Defendant guilty, you must find that on or about November 28, 2016, in Ashland County, Ohio the Defendant, while operating or participating in the operation of a motor vehicle, caused the death of Ernest R. Whitesel.
>
> Recklessly operate means to cause or have caused movement.
>
> * *

A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

And risk is a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that a certain circumstance may exist.

Recklessly includes conduct that is knowingly or purposely performed. Tr. Transcript at 416, 419.

**{¶19}** Appellant contends, "The instruction given advised jurors that they would need to find that Appellant, while operating a motor vehicle, caused the death of Ernest R. Whitesel" and such "advisement lacked the required mens rea necessary to sustain a finding of guilt." Brief of Appellant at 4. Appellant adds, by defining "recklessly operate" as "to cause or have caused movement", the trial court "advised the jury that it could convict so long as it believed that Appellant had operated a vehicle that caused movement and Ernest R. Whitesel died." *Id.* Appellant concludes the trial court's failure to instruct on the appropriate mens rea was "unquestionably prejudicial as is [sic] relieved the jury of its obligation to determine that the State proved each and every element, including that the conduct was reckless." *Id.* at 5. We disagree.

**{¶20}** The written jury instruction as read by the trial court and provided to the jury for use during deliberations provides:

The Defendant, Raymond L. Stafford, is charged in Count 1 of the Indictment, Aggravated Vehicular Homicide.  Before you find the Defendant guilty, you must find that on or about November 28, 2016, in Ashland County, Ohio the Defendant, while operating or participating in the operation of a motor vehicle, caused the death of Ernest R. Whitesel recklessly.

Operate means to cause or have caused movement.

**{¶21}** This instruction parallels the language of the Ohio Jury Instruction for aggravated vehicular homicide, OJI CR 503.06. The state's motion to correct the record sought to correct the trial transcript to conform to trial court's oral and written instructions. The court reporter filed the Errata Sheet to reflect the same.  The Errata Sheet changes the placement of a single punctuation mark, a period.  When the court reporter changes the placement of the period, the jury instruction parallels the trial court's written instruction as well as the Ohio Jury Instructions.

**{¶22}**  We further find the jury instructions, as a whole, were not "so deficient as to render the jury's verdict unreliable," as Appellant asserts.  Brief of Appellant at 7.  The trial court was not required to define the terms "purposeful" and "knowing" for the jury as such are not the culpable mental state for the offense of aggravated vehicular homicide.

**{¶23}**  Based upon the foregoing, we find trial counsel was not ineffective for failing to object to the jury instructions.

**{¶24}**  Appellant's first assignment of error is overruled.

III

{¶25} In his third assignment of error, Appellant contends his constitutional right to be present at every stage of his proceedings was violated when the trial court conducted a voir dire of Juror No. 2, who was already impaneled, outside of his presence and without a waiver of his right to be present.

{¶26} An accused has a fundamental right to be present at all stages of his criminal trial. Ohio Constitution, Article I, Section 10; Crim.R. 43(A). "An accused's absence, however, does not necessarily result in prejudicial or constitutional error." *State v. Hamilton*, 1st Dist. Hamilton Nos. C-160247 and C-160248, 2017-Ohio-8140, ¶ 30. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.*, citing, *Snyder v. Massachusetts*, 291 U.S. 97, 107–108, 54 S.Ct. 330, 78 L.Ed. 674 (1937), *overruled on other grounds*; *Duncan v. Louisiana*, 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); and *Malloy v. Hogan*, 378 U.S. 1, 2, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), fn. 1. In order to be deemed nonprejudicial, an error of constitutional stature, either state or federal, must be "harmless beyond a reasonable doubt." *State v. Williams*, 6 Ohio St.3d 281, 286, 452 N.E.2d 1323 (1983), citing, *Chapman v. California, supra,* at 24, 87 S.Ct. at 828; *State v. Abrams* (1974), 39 Ohio St.2d 53, 313 N.E.2d 823, paragraph two of the syllabus.

{¶27} We find Appellant's absence during the voir dire of Juror No. 2 did not result in prejudicial or constitutional error, primarily because Juror No. 2 was ultimately excused from the jury prior to the start of their deliberations.

{¶28} The voir dire of Juror No. 2 occurred after the jury was sworn in and impaneled. During the lunch recess, Juror No. 2 remembered he had met Whitesel 5 or 6 years prior to the trial, and so advised the trial court. The trial court conducted an in camera voir dire of Juror No. 2 with the prosecutor and defense counsel. Defense counsel did not object to Appellant's absence and, in fact, advised the trial court Appellant's presence was not necessary.

{¶29} In answering the questions posed to him by the trial court, the prosecutor, and defense counsel, Juror No. 2 revealed he and Whitesel worked at the same company, but in different departments. Juror No. 2 would see Whitesel at company meetings and described the frequency of their contact as "very seldom." Juror No. 2 said he did not associate with Whitesel, did not really talk to him, and it had "been quite a few years" since he last saw Whitesel. Juror No. 2 also disclosed Whitesel's ex-girlfriend and/or her family lived down the road from him, but he did not talk to them and he moved to the area following Whitesel's death. Although Juror No. 2 knew some of Whitesel's family members, he had not seen them since school. Juror No. 2 confirmed the limited contact he had with Whitesel would not impair his ability to keep an open mind.

{¶30} The trial court did not excuse Juror No. 2 and the trial proceeded. Following the presentation of evidence, the trial court properly instructed the jury on the law applicable to the case as well as how to conduct deliberations and complete the verdict form. The trial court then advised it would be excusing two jurors, one of the alternates and one of the seated jurors. The trial court explained, "we did have a situation during the first day of trial where one of the jurors fell asleep for a total of approximately 42 minutes, and it was noticed by the court, counsel and other jurors, and which was also documented

by the court reporter, and because of that, I don't believe it's appropriate to keep that juror on the jury because it would be unfair to the parties." Trial Transcript at 424. Thereafter, the trial court excused Juror No. 2. Juror No. 2 did not participate in deliberations.

**{¶31}** We find Appellant's interests were adequately represented by his attorney who was present and actively examined Juror No. 2. Addressing a similar situation, the United States Court of Appeals for the Seventh Circuit in *Henderson v. Lane* (C.A.7, 1980), 613 F.2d 175, 179, rejected a defendant's claim the failure to secure his attendance at a proceeding to reinstate an alternate juror was reversible error, finding his attorney's presence at the proceeding to be "[t]he most obvious barrier to prejudice in * * * [the] case." See also, *United States v. Brown, supra,* 571 F.2d at 987 (defense counsel's active participation in an in-chamber conference regarding the dismissal of a juror negated any prejudicial impact that might have resulted from defendant's absence during the discussion.)

**{¶32}** We also find Appellant's attendance at the voir dire would have contributed little to his defense. The trial court, the prosecutor, and defense counsel thoroughly examined Juror No. 2 and elicited sufficient information from which the trial court could determine Juror No. 2 could be impartial.

**{¶33}** Accordingly, we find Appellant's absence during the voir dire of Juror No. 2 was not only nonprejudicial under constitutional standards, but was also harmless beyond a reasonable doubt.

{¶34} Appellant's third assignment of error is overruled.

{¶35} The judgment of the Ashland County Court of Common Pleas is affirmed.


By: Hoffman, P.J.

Baldwin, J.  and

Wise, Earle, J. concur